## The Bauer Cooperage Co. v. The C. L. Tartar Co.

(Decided October 11, 1911.)

### Appeal from Pulaski Circuit Court.

1. Written Contract—Merger of Parol.—When a written contract is entered into, the previous parol negotiations are merged in the writing, and may not be shown to vary its terms in the absence of fraud or mistake.

2. Stave Contract—Quality—Jury Question.—Under a contract for the sale of first class staves, the purchaser being authorized to hold for the seller all second class staves or culls shipped to him in any car, it is a question for the jury whether the staves so refused by the purchaser were in fact second class or culls.

MORROW & MORROW, O. H. WADDLE & SONS for appellant.

SHARP, BETHURUM & COOPER for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Reversing.

The C. L. Tartar Company is a firm which manufactures staves at Somerset, Kentucky. The Bauer Cooperage Company is a corporation having its headquarters at Lawrenceburg, Indiana, and buys staves. On Octo-

ber 13, 1907, H. Wright, the agent of the Bauer Cooperage Company, went with J. S. Cooper, of the firm of C. L. Tarter Company, into its stave yard, proposing to buy first-class whiskey staves. Cooper priced him the first-class staves at $75 a thousand. Wright got on top of some of the stacks and pulled out staves from the sides of others of the stacks, in order to see what they were. There were about 125,000 staves in the yard, and Wright did not go to all the stacks. After he had examined the staves in this way they went to the office of the Tartar Company, and there Cooper agreed to sell the first-class staves at $72 a thousand; and the following written agreement was drawn up and signed:

"THIS CONTRACT of bargain and sale made and entered into this 12th day of October, 1907, by and between The C. L. Tartar Co., party of the first part, and The Bauer Cooperage Co., party of the second part,

"Witnesseth: That the party of the first part has this day bargained and sold to the party of the second part two hundred thousand (200,000) 7-8 inch when dry bucked whiskey staves; the delivery thereof to be made as follows: F. O. B. cars at Wright Switch in Somerset, Ky., shipments to begin at once and to be continued as rapidly as possible, and all of said staves to be delivered by the first day of January, 1908.

"The party of the second part agrees to pay to party of the first part $72 per thousand, according to delivery made at Wright Switch F. O. B. cars. The party of the second part is to hold at Lawrenceburg, Ind., any culls or second-class staves contained in any shipment made to it, and same is to be held subject to the orders of party of the first part.

"IN TESTIMONY WHEREOF WITNESS the signatures of the parties hereto the day and date above written.

"THE C. L. TARTAR CO.,
                                        "J. S. C.
"THE BAUER COOPERAGE CO.,
                        "H. WRIGHT, Sec'y."

The Tarter Co. shipped to the Bauer Cooperage Co. five car loads of the staves. The purchaser threw out 7,664 staves as culls or second-class, holding them subject to the order of the seller, and paid for the remainder. This action was brought by the Tartar Co. against the Bauer Cooperage Co. to recover the price of

the 7,664 staves, on the ground that the purchaser took the staves at Somerset and had no right to cull them at Lawrenceburg, Indiana. On a trial of the case there was a judgment for plaintiff. The defendant appeals.

There is neither pleading nor proof of mistake or fraud in the contract. The written contract was entered into after Wright and Cooper returned to the office. The previous oral negotiations between the parties were merged in the writing, and nothing that was said or done before the contract was written and signed can be received to vary its terms. The court should have excluded all evidence that was introduced on the trial for this purpose. The contract provides that the purchaser is to hold at Lawrenceburg, Indiana, any culls or second-class staves contained in any shipment made to it, and that these are to be held subject to the order of The Tartar Co. There is no ambiguity in its terms, and it must be enforced as written. The Bauer Cooperage Co., under the contract, bought the first-class staves. It did not buy the culls or second-class staves. If culls or second-class staves were contained in any shipment, these simply remained the property of the shipper. Whether the 7,664 staves, or any of them, were culls or second-class staves, is a question of fact, and the only question of fact to be submitted to the jury. The burden is on the plaintiffs to make out their case and show that the staves were first-class staves, as defined in the contract. To the extent that they were first-class staves, the plaintiff should recover. The instructions of the court did not conform to the view we have indicated.

Judgment reversed and cause remanded for a new trial and further proceedings consistent herewith.